# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple iPhone Inventoried as 4122023CE065 Item #1 | )<br>)<br>)  Case No.  '23 MJ1749<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein,

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1029(a)(2) | Use of Unauthorized Access Device |
| 18 USC 1029(a)(4) | Possession of Access Device-Making Equipment |

The application is based on these facts:
See Attached Affidavit of USSS Special Agent Henderson, incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

USSS Special Agent Kenneth Henderson
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: 06/01/2023

*Judge's signature*

City and state: San Diego, California        Hon. Jill L. Burkhardt, US Magistrate Judge
*Printed name and title*

## STATEMENT OF FACTS

I, Kenneth Henderson, being duly sworn, state as follows:

1. I am a Special Agent ("SA") with the United States Secret Service ("USSS") and have been so employed since June 2015. In this capacity, I currently am assigned to the Criminal Investigative Division. Upon entering the USSS, I completed 18 weeks of basic training. This training covered various aspects of federal law enforcement, including instruction on the investigation of financial crime. I have investigated numerous individuals for a wide variety of federal and state felony offenses, including computer fraud and access device fraud. Furthermore, I have attended over 100 hours of USSS training pertaining to computer investigations involving cyber and electronic crimes.

2. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this and related investigations into California Electronic Benefit Transfer (EBT) fraud; my review of documents and records related to this and related investigations; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

*Overview*

3. The United States Secret Service (USSS) and the Southern California Cyber Fraud Task Force (SoCal CFTF) are working with state and federal agencies to investigate the theft and misuse of funds electronically distributed to individuals receiving public assistance.

4. This Affidavit is submitted in support of an arrest warrant for Constantin IRIMIA and warrants to search one black iPhone (inventory # 4122023CE065 Item #1)

for evidence of and relating to unauthorized access device fraud. On June 1, 2023, Constantin IRIMIA successfully withdrew $2,940 from a San Diego County ATM using two access devices in the form of gift cards that were encoded with EBT account information issued to someone else. During an inventory search of the vehicle that IRIMIA was driving, law enforcement discovered skimming equipment in the form of a skimmer, a pinhole camera overlay that appeared designed to record ATM PINs, and tools used to insert the skimmer into ATMs. Based on the facts described below, I submit there is probable cause to arrest IRIMIA and search his devices for evidence of violations of 18 U.S.C. §§ 1029(a)(2) (unauthorized access devices) and 1029(a)(4) (possession of device making equipment).

*Background on Electronic Benefit Transfer Cards*

5. In the summer of 2022, California's Department of Social Services (CalDSS) advised the SoCal CFTF that it had detected a rise in fraud associated with the electronic debit cards issued to individuals and families who qualify for California public benefits like CalFresh and CalWORKS.

6. The U.S. Department of Agriculture also noticed a rise in fraud associated with the Supplemental Nutrition Assistance Program (SNAP) that it administers through its Food and Nutrition Service (FNS). SNAP is a federally funded assistance program designed to help low-income individuals and families purchase food. In California, SNAP public assistance benefits are distributed through CalFresh and loaded to an account that a qualified recipient access by means of an access card, similar to a debit or credit card, called the California Advantage Electronic Benefit Transfer (EBT) Card. The EBT card system was developed to enable government agencies in California and many other states to deliver public assistance benefits to recipients using electronic transfers. The EBT system is a computer-based system through which authorization for qualifying food purchases and cash withdrawls is received from either a point-of-sale (POS) terminal or an ATM.

AFFIDAVIT IN SUPPORT OF WARRANT -2-

7. CalWORKS is a public assistance program that provides cash aid to eligible families with one or more children in the home. Families that apply and qualify for ongoing CalWORKS assistance receive money each month to help pay for housing, food, and other necessary expenses. CalWORKS, along with CalFresh, is distributed by CalDSS through the California Advantage EBT card.

8. California public benefits associated with California's Employment Development Department (EDD) are being stolen in a similar way to CalFresh and CalWORKS benefits. In California, the EDD administers unemployment insurance, disability insurance, and paid family leave programs. EDD benefits, like EBT benefits, are distributed via electronic transfers to an access device card that, similar to a debit card, enable the user to make cash withdrawals and payments. In California, EDD benefits are distributed through an EBT card issued by Bank of America.

9. After a recipient applies for, and is approved to receive, California public assistance benefits, the benefits are automatically distributed to the recipient's EBT or EDD card on a designated day of the month (typically, in California, the first five days of the month). To access their benefits to purchase eligible food items, recipient swipe their card through a point-of-sale terminal, or insert it into an ATM, that records the card number, date, time, and amount of the transaction. The recipient then enters his/her unique Personal Identification Number (PIN) into a keypad to complete the transaction.

10. The USSS has gathered evidence indicating that members of what appear to be one or more criminal enterprises are stealing California EBT and EDD account information by installing skimmers on point-of-sale terminals, often by targeting point-of-sale terminals at large volume retailers, like Walmart, in communities with higher concentrations of public benefit recipients. The skimmed data is then often re-encoded onto the magnetic strips of cards that members of the conspiracy use to make unauthorized withdrawals and purchases. These re-encoded cards are sometimes referred to as "cloned" cards. Cloned cards can be a blank white plastic card, or another

debit, credit, or gift card. Cloned cards may have names or numbers embossed on the physical face of the card. A common feature of cloned cards is that the account number encoded on the card's magnetic strip will not match the number embossed on the card's face. To facilitate the use of the stolen EBT benefits, members of the scheme will commonly put stickers bearing the account's PIN on the physical cards, or access devices, that are swiped at a point-of-sale terminal along with the account balance.

11. Data provided by CalDSS indicates that, between approximately August 2022 and January 2023, in the Southern District of California and elsewhere, more than approximately $38.9 million has been stolen using compromised EBT account information. Most of the stolen funds were obtained through unauthorized ATM withdrawals. CalDSS reports that approximately $2.3 million has been stolen through unauthorized ATM withdrawals in San Diego County and San Diego residents who receive EBT benefits have had approximately $2.9 million of their benefits fraudulently withdrawn at ATMs outside the county.

*Prior Southern California EBT Fraud Operations*

12. In July and August 2022, the SoCal CFTF learned of connected incidents at Walmart stores in Chula Vista, National City, and Sherman Heights involving overlay skimmers that appeared to be part of the California EBT fraud scheme.[1] According to police reports and records obtained by the task force, in June 2022, National City Police

---

[1] An overlay skimmer is a skimmer that is part of a counterfeit faceplate designed to resemble the legitimate point-of-sale terminal. Overlay skimmers are mounted to the legitimate point-of-sale terminal and allow a victim's credit or debit card to be read by the legitimate terminal. In the process of inserting the victim's credit or debit card into the legitimate terminal, the card is also read by the overlay skimmer, which stores the card's stolen electronic information for later unauthorized use. The overlay skimmers at issue in the California EBT investigation are not designed to read credit or debit cards embedded with a chip (i.e., most credit and debit cards). Unlike most bank-issued credit and debit cards, California EBT cards do not have chips (which makes the cards less expensive). The overlay skimmers that cannot read cards with chips therefore typically target California EBT cards.

AFFIDAVIT IN SUPPORT OF WARRANT -4-

arrested a Romanian national who was caught installing an overlay skimmer without authorization at a National City Walmart. The suspect had at least one coconspirator assist him with the installation. (The coconspirator left the store before law enforcement arrived.) In July 2022, employees at a Chula Vista Walmart discovered an unauthorized overlay skimmer installed on a point-of-sale terminal. Store surveillance footage showed that the individual arrested by National City Police had, along with his unidentified coconspirator, installed the overlay skimmer at the Chula Vista Walmart two days before his arrest in National City. When arrested by National City Police, the suspect presented a fake European ID that misrepresented his name and nationality Record checks revealed his true name, Romanian nationality, and indicated that he had entered the U.S. without inspection. Additional investigation revealed that this individual, or someone closely matching his appearance, had installed an overlay skimmer at a Sherman Heights Walmart in March 2022 with the assistance of two additional coconspirators. The SoCal CFTF obtained a warrant (22MJ3289) to search the phone seized incident to the suspect's arrest. The search showed that the phone was assigned to a Los Angeles phone number, which was consistent with statements the individual made to the arresting officer that he lived in the Los Angeles area.

13.  On the night of August 31, 2022, and into the early morning hours of September 1, 2022, the SoCal CFTF conducted surveillance of three San Diego ATMs that had previously been used to make unauthorized California EBT withdrawals. With information provided by bank investigators, the task force identified and arrested two men. Both presented fake European IDs at the time of their arrest that misidentified their names and nationalities. Record checks ultimately revealed that both men were Romanian citizens who lacked legal status to be in the United States. The SoCal CFTF filed state charges against the two defendants, who were released on bond and disappeared. Both individuals are believed to reside in the greater Los Angeles area.

AFFIDAVIT IN SUPPORT OF WARRANT -5-

14. In a search incident to their arrests, the SoCal CFTF found the men to be in possession of approximately $10,000, gift cards with magnetic strips, skimming tools, and a skimmer. The gift cards all contained what appeared to be a PIN handwritten on them. Task force members also found and seized multiple cell phones and a laptop. Pursuant to a federal warrant (22MJ4389), the SoCal CFTF later searched these cell phones and laptop.

15. The search showed that men used their phones to record ATM withdrawals, store and communicate about EBT cards and track data (e.g., the electronic account information encoded on a card's magnetic strip), coordinate Airbnb rentals, and included information for a rental car that was caught on surveillance cameras during an unauthorized ATM withdrawal. These search results were consistent with reports that individuals involved in Romanian California EBT skimming schemes were using rental cars and Airbnbs at the start of each month to conceal their identity and location while engaging in unauthorized EBT withdrawals designed to steal public assistance benefits before the rightful recipients could use them. The results of the laptop search included photos and video showing a skimming device hooked up to what appeared to be the searched laptop. In the video, which showed the laptop's screen, the laptop user used a software program to extract and process raw skimmer data and then convert the data into usable track data that could then be encoded onto an access device's magnetic strip. The laptop contained multiple photos and videos of text files of converted track data, as well as internet browsing history showing the user(s) accessed websites that confirm if a credit or debit card number is open and active, as well as pinhole camera footage of what appeared to be ATM keypads where people were recorded entering what appeared to be PINs.

16. Subsequent investigation by the USSS revealed that one or both of the men arrested on September 1, 2022 had, in coordination with additional unidentified coconspirators, made unauthorized EBT account withdrawals at San Diego County

ATMs on the nights or early morning hours of 5/2/2022, 5/3/2022, 6/1/2022, 6/15/2022, 7/7/2022, 7/8/2022, 7/9/2022, 7/12/2022, 8/1/2022, 8/2/2022, 8/3/2022. The largest withdrawals tended to be at the beginning of each month. For example, on July 2, 2022, $16,990 was withdrawn from ATMs at one location (1775 Camino De La Reina) and, on August 2, 2022, $27,860 was withdrawn from ATMs at the same location. Surveillance footage also showed that an individual matching the appearance of one of the men arrested had installed a skimmer at a San Diego convenience store in mid-July 2022 and returned a few days later to retrieve it. This pattern of activity was consistent with reporting that the EBT fraud crews tended to use compromised EBT and EDD accounts to make unauthorized cash withdrawals at the start of each month and to install and retrieve skimmers at other times to harvest compromised EBT and EDD account information.

17. In early February 2023 and early March 2023, the USSS's Los Angeles field office conducted similar surveillance operations at ATMs located in their district. Pursuant to these operations, the Central District arrested and charged 14 individuals for engaging in bank fraud, access device fraud, and/or aggravated identify theft. All these individuals were found in possession of fraudulent EBT account information and two also possessed fraudulent EDD account information encoded onto access device cards. At least three also possessed skimming devices and skimming-related tools. Between the 14 people charged, they possessed over 1000 fraudulent cards. Of these cards, approximately 635 were encoded with compromised California EBT account information and approximately 388 were encoded with compromised EDD account information. Most of the cards were "Vanilla" gift cards that were encoded with compromised account information. All 14 defendants were Romanian and all but one lacked status and appeared to have entered the United States without inspection. Six of the defendants possessed fake European IDs that misidentified their names and nationalities. All but one of the defendants was in possession of one or more cell phones.

The USSS is still reviewing these phones pursuant to a federal search warrant. Preliminary review of at least one defendant's phone shows the phone was used to research ATM locations.

18. In late March 2023, the SoCal CFTF obtained arrest warrants (23MJ0914) for two Romanian nationals who conspired to use stolen EBT benefits to make over $250,000 in unauthorized SNAP transactions at grocery stores located in San Diego and Riverside County. To date, only one of the defendants has been arrested and she is charged by Information (23CR0794-RBM). Search results for two phones seized from the charged defendant and searched pursuant to a federal warrant (23MJ0606) include geolocation information tying the conspirators to fraudulent activity, videos and photographs of fraudulent proceeds, and coconspirators' names, contact information, and communications. The members of this conspiracy appear to have bought compromised EBT account information from a fellow Romanian.

*June 2023 San Diego Operation*

19. On the night of May 31, 2023, the USSS and SoCal CFTF set up surveillance of a Union Bank ATM located at 200 West D Street Encinitas, California 92024 to target EBT and EDD-related fraud in San Diego County. The USSS selected this date and ATM for surveillance based on historical records indicating that fraudulent EBT withdrawals had previously occurred at this ATM, particularly at night and the early morning at the start of the month when EBT payments are typically transferred to benefit recipients. U.S. Bancorp, which is commonly known as "U.S. Bank" and owns Union Bank, operates in interstate and foreign commerce and is headquartered in Minnesota.

20. At approximately 4:06 am on the morning of June 1, 2023, law enforcement observed an individual later identified as Constantin IRIMIA approach the Encinitas ATM. IRIMIA arrived at the location in a Silver Volkswagen Tiguan SUV. IRIMA first drove past the location before conducting a U-turn a block later and

AFFIDAVIT IN SUPPORT OF WARRANT -8-

returning to the location. IRIMIA then drove into the parking lot of the bank to the drive thru ATM. This driving pattern was consistent with counter-surveillance measures previously employed by individuals engaged in fraudulent EBT ATM withdrawals.

21. IRIMIA stayed in the vehicle and approached the drive thru ATM. Law enforcement observed him conduct approximately three transactions at the ATM over approximately four minutes. During these transactions, law enforcement observed IRIMIA at the ATM still located inside his vehicle and interacting with the ATM. Based upon my training and experience, while not inherently illicit, individuals conducting legitimate transactions at ATMs typically conduct a single transaction and do not transition between multiple payment cards rapidly to conduct several transactions in a short period of time. Similarly, most legitimate ATM users do not conduct what appears to be counter-surveillance before making ATM withdrawals.

22. While IRIMIA was at the ATM, law enforcement received contemporaneous information from U.S. Bank while IRIMIA was conducting the multiple observed withdrawal transactions. U.S. Bank confirmed that the first withdrawal attempt was on an EBT account for $1880. The transaction was unsuccessful due to an invalid pin. A second withdrawal attempt on a separate EBT account was successful for $1360. A third transaction was also successful on a third EBT account for $1580. In total IRIMIA successfully withdrew $2940 and attempted to withdraw $4,820.

23. After observing approximately three transactions and learning they were for multiple EBT accounts, law enforcement approached and observed IRIMIA still conducting transactions at the ATM including using the touch screen. IRIMIA was directed to turn off his vehicle and step out of the vehicle.

24. Based on the date, time, ATM location, presence of multiple, and successive ATM withdrawals on multiple EBT cardholder accounts during a short time period, law enforcement detained IRIMIA to investigate further.

AFFIDAVIT IN SUPPORT OF WARRANT -9-

25. Contained in IRIMIA's vehicle were approximately 3 cloned EBT cards, which were Visa gift cards and not California Advantage EBT cards or ATM debit cards. These cards were seen in plain view through the passenger side window and were located in the center console and driver side door. Law enforcement confirmed these were cloned EBT cards by reading the magnetic stripe. Moreover, the cloned cards had handwriting bearing what appeared to be PINs that appeared to correspond to each cloned card and would have been needed to make unauthorized ATM withdrawals.

26. Also contained in IRIMIA's vehicle was approximately $2,940 of U.S. currency, which were contained within the center console of the vehicle. Records provided by U.S. Bank indicate that, while at that ATM location, IRIMIA had conducted approximately $2,940 in total unauthorized ATM withdrawals, which matched the amount of cash found. The vehicle also had a New York license plate taped over a rear California license plate. The New York license plate came back to an expired Toyota Corolla. The front license plate appeared to have been removed. The attempt to conceal the vehicle's registered license plates was inconsistent with lawful activity and further evidence that IRIMIA had acted with fraudulent intent when making the observed ATM withdrawals.

27. When asked to identify himself/herself, IRIMIA provided the name Josef Chalupsky and date of birth of May 21, 1983. IRIMIA also possessed two IDs from the Czech Republic bearing the name Josef Chalupsky. Additionally, IRIMIA possessed what appeared to be two genuine access devices from Bank of America in the name of Josef Chalupsky. IRIMIA appeared to understand and responded to law enforcement in English, but indicated he spoke Italian and Spanish.

28. Based upon the above relevant facts, the SoCal CFTF conducted a probable cause arrest of IRIMIA on June 1, 2023 at approximately 04:41 hours.

29. IRIMIA was processed for arrest and read his Miranda Warning in English and shown his Miranda Warning in Romanian at the time of the arrest. After being

transported back to the USSS San Diego Field Office, IRIMIA chose to speak with law enforcement and was interviewed by native Romanian speakers in Romanian. According to draft translations, IRIMIA admitted to stealing and possessing access device cards. He also admitted to illegally crossing the border from Canada into the United States. IRIMIA also admitted to possessing deep insert skimming device using the Romanian slang term for the device.

30. Although IRIMA provided the name and an ID bearing the name Josef Chalupsky, it was later determined that his true name was Constantin IRIMIA and that they were Romanian.

31. Pursuant to his arrest, law enforcement conducted an inventory search of the vehicle that IRIMIA was driving and it appears to be a rental car. The car will be returned to the registered owner, who does not appear to be involved in the fraudulent ATM withdrawals. During an inventory search of the vehicle to collect IRIMIA's personal effects, law enforcement found a skimmer and a pinhole camera overlay in the trunk of the vehicle concealed under the trunk floor in the spare tire area. Tools used to insert the skimmer into ATMs were also found along with the skimmer in the same spare tire area.

32. At the time of his arrest, IRIMA possessed 1 cell phone(s): A black Apple iPhone. This phone were seized incident to arrest and inventoried as "4122023CE065 Item #1." I submit there is probable cause to search the phone for evidence of and relating to skimming and EBT fraud-related activity. As outlined in part above, individuals engaged in similar activities in Southern California (e.g. Romanians who travel to and around San Diego County using rental cars to make unauthorized EBT ATM withdrawals in the predawn hours at the start of the month) have been shown to use their phones to communicate with coconspirators, research ATM locations, navigate, store and record fraud-related information (e.g. electronic account information, photos and videos of contraband), conduct balance inquiries via phone and

AFFIDAVIT IN SUPPORT OF WARRANT -11-

the Internet, and facilitate travel and lodging while conducting fraud-related activities. The investigation to date shows that EBT fraud and related skimming activities involving Romanians has occurred in San Diego County since at least March 2022. Accordingly, this affidavit seeks authorization to search the one cell phone seized from IRIMA for evidence from March 1, 2022 through and including June 1, 2023.

Procedures for Electronically-Stored Information

### Cell Phones

33.   It is not possible to determine, merely by knowing the cellular phone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

AFFIDAVIT IN SUPPORT OF WARRANT -12-

34. Following the issuance of this warrant, the USSS will collect the subject cellular telephone and subject it to analysis. If there are technological challenges, the examiners may need to consult with other law enforcement partners. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

35. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (**90**) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

36. The United States is unaware at this time of other attempts to search the subject device.

//

//

AFFIDAVIT IN SUPPORT OF WARRANT -13-

## CONCLUSION

37. For the reasons described above, there is probable cause to believe that IRIMIA, did knowingly and with intent to defraud use one and more unauthorized access devices during a one-year period, and by such conduct obtain cash and other things of value aggregating $1,000 and more during such one-year period in violation of 18 U.S.C. § 1029(a)(2), and did knowingly, and with intent to defraud, have control or custody of, or possesses, device-making equipment in violation of 18 U.S.C. § 1029(a)(4).

_____
Special Agent Kenneth Henderson
UNITED STATES SECRET SERVICE

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on June 1, 2023.

_____
HON. JILL L. BURKHARDT
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF WARRANT                -14-

ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    a.    Black Apple iPhone inventoried as 4122023CE065 Item #1 cell phone (the "Target Device").

The Target Device is currently in the custody and control of U.S. Secret Service at 550 W. C St, Suite 660, San Diego, CA 92101.

ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the Target Device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the Target Device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, mobile messaging application content, social media content, images, records from third-party and websites applications (e.g., Mapquest, Google Maps), photographs, audio files, videos, browsing history, and location data, for the period of March 1, 2022, up to and including June 1, 2023, for the following:

   a.   Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to access devices (e.g., EBT cards, EDD cards, debit cards, the electronic track data embedded on such cards) or account information associated with such devices (e.g., PINs, names), including but not limited to the unauthorized use, interception, collection, transfer, or possession of such devices or related account information;

   b.   Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to skimming devices, or the location or manner in which such devices are installed, deployed, distributed, collected, or manufactured;

   c.   Communications, records, images, videos, electronic files, and attachments tending to discuss or reflect an intent to i) steal or misuse access devices, or account information associated with such devices, or ii) install, deploy, distribute, collect, or manufacture unauthorized skimming devices, that would tend to discuss or establish motive,

      opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident, with regard to the crimes under investigation;

d.    Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of, or persons with control over or access to, the Target Device, including the telephone number associated with any of the Target Device and, without any date restriction, all contact entries;

e.    Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of the Target Device's state of mind, knowledge, motive, and voluntariness regarding the crime under investigation, such as any communications, records, or attachments demonstrating knowledge that EBT or EDD account information, PINs, victim names, skimmers, or access devices were being used without authorization or with an intent to deceive;

f.    Communications, records, images, videos, electronic files, and attachments tending to identify or establish the use of fake or stolen personal identification information, such as the names or PINs found on California Advantage cards;

g.    Communications, records, images, videos, electronic files, and attachments tending to identify any co-conspirators, co-schemers, criminal associates, or others involved in a scheme to steal or misuse access device card information; and

h.    Communications, records, images, videos, electronic files, and attachments that provide context to any communications, records, images, videos, electronic files, and attachments described above, such as electronic messages sent or received in temporal proximity to any relevant electronic message and any content tending to identify the user(s) of the device to be searched;

**which are evidence of violations of 18 U.S.C. §§ 1029(a)(2) and (a)(4).**